## IATA STANDARD GROUND HANDLING AGREEMENT

## STANDARD GROUND HANDLING AGREEMENT – SIMPLIFIED PROCEDURE

### Bundle III Annex B1.0.DCA– Location(s), Agreed Services and Charges

to the Standard Ground Handling Agreement (SGHA) of January 2008

| | |
|---|---|
| between: | Frontier Airlines, Inc. |
| having its principal office at: | 8909 Purdue Rd.<br>Suite 300<br>Indianapolis, IN 46268 |

and hereinafter referred to as 'the Carrier'

| | |
|---|---|
| and: | Airport Terminal Services, Inc. |
| having its principal office at: | 111 Westport Plaza Drive, Suite 400<br>St. Louis, Missouri 63146 USA |

And hereinafter referred to as 'the Handling Company'

(each a "Party," and collectively, the "Parties.")

| | |
|---|---|
| effective from: | August 21, 2013  ("Effective Date") |
| this Annex: | Bundle III - Annex B1.0.DCA |
| for the location: | Reagan National Airport (DCA) |
| valid from: | August 21, 2013 |
| and replaces: | None |

### PREAMBLE:

This Annex B is prepared in accordance with the simplified procedure whereby the Parties agree that the terms of the Main Agreement and Annex A of the SGHA of January 2008 as published by the International Transport Association shall apply as if such terms were repeated here in full. By signing this Annex B, the Parties confirm that they are familiar with the aforementioned Main Agreement and Annex A.

### PARAGRAPH 1.        GROUND HANDLING SERVICES AND CHARGES

1.1    For a single ground handling consisting of the arrival and the subsequent departure at agreed timings of the same aircraft, the Handling Company shall provide the following services of Annex A at the following rates.

1

EXHIBIT A

## SECTION 1. REPRESENTATION, ADMINISTRATION AND SUPERVISION

### 1.1 General

**1.1.2** Liaise with local authorities.

**1.1.3** Indicate that the Handling Company is acting as handling agent for the Carrier.

**1.1.4** Inform all interested Parties concerning movements of the Carrier's aircraft.

### 1.2 Administrative Functions

**1.2.4** Maintain the Carrier's manuals, circulars, and other relevant operational documents connected with the performance of the services.

### 1.3 Supervision and/or Co-ordination of Services Contracted by the Carrier with Third Party(ies)

**1.3.1**
    **(a)**    Supervise
    **(b)**    Co-ordinate services contracted by the Carrier with third party(ies)

**1.3.2** Ensure that the third party(ies) is(are) are informed about operational data and Carrier's requirements in a timely manner.

**1.3.3** Liaise with the Carrier's designated representative

**1.3.4** Verify availability and preparedness of staff, equipment, Loads, documentation and services of the third party(ies) to perform the services.

**1.3.5** Meet aircraft upon arrival and liaise with crew.

**1.3.7** Verify dispatch of operational messages.

**1.3.8** Note irregularities and inform the Carrier.

### 1.4 Station Management

**1.4.8** Handle the contents of Carrier's company mail pouches

## SECTION 2. PASSENGER SERVICES

### 2.1 General

**2.1.1** Inform passengers and/or public about time of arrival and/or departure of Carrier's aircraft and surface transport.

**2.1.3** When requested by the Carrier,
    **(a)**    provide or
    **(b)**    arrange for special equipment, facilities and specially trained personnel, for assistance to

    **1.**    unaccompanied minors.
    **3.**    VIPs.
    **6.**    special medical transport
    **7.**    others, as specified in Annex B.

**2.1.4** Assist passengers when flights are interrupted, delayed or cancelled.

**2.1.6**

    **(a)**    Notify the Carrier of complaints and claims made by the Carrier's passengers.

**2.1.7** Handle lost, found and damaged property matters.

    **(a)**    accept baggage irregularity reports

    **(b)**    enter data into baggage tracing system

    **(c)**    maintain baggage tracing system files for period specified in Annex B

    **(d)**    make payments for incidental expenses

    **(e)**    arrange for delivery of delayed baggage to passengers

    **(f)**    handle communications with passengers

**2.1.8** Report to the Carrier any irregularities discovered in passenger and baggage handling.

**2.1.10** Perform on behalf of the Carrier the following sales functions

    **(a)**    reservations

    **(b)**    issuance of transportation documents

    **(c)**    e-ticketing as specified in Annex B

## 2.2 Departure

**2.2.2** Check and ensure

    **(a)**    that tickets are valid for the flight(s) for which they are presented. The check shall not include the fare.

    **(b)**    that tickets presented are not blacklisted in the industry ticket service data base. Blacklisted documents shall not be honored and immediately reported to the Carrier.

**2.2.3**

    **(a)**    Check travel documents for the flight(s) concerned. In the event that the Handling Company does not have access to information that verifies visa validities the Handling Company will not have liability. The Handling Company shall not be liable for immigration fines in the event of non-bona fide travel documents or other events which are outside of their control.

    **(b)**    Enter required passenger and/or travel document information into Carrier's and/or government system.

**2.2.4**

    **(a)**    Weigh and/or measure checked and/or cabin baggage (scale to be provided by Carrier)

    for

    **1.**    initial flight.

    **2.**    subsequent flight(s).

**2.2.5** Excess baggage

    **(a)**    determine excess baggage

    **(b)**    issue excess baggage ticket

    **(c)**    collect excess baggage charges

    **(d)**    detach applicable excess baggage coupons

**2.2.6** Tag checked and/or cabin baggage for

    **(a)**    initial flight.

    **(b)**    subsequent flight(s).

**2.2.7** effect conveyance of checked baggage to the baggage sorting area

**2.2.8** effect conveyance of oversized checked baggage to the baggage sorting area

**2.2.9** Collect airport and/or any other service charges from departing passengers.

**2.2.10**

    **(a)**    Carry out the Carrier's seat allocation or selection system

    **(b)**    Issue boarding pass(es)

    **(c)**    Detach applicable flight coupons for

    **1.**    initial flight.

    **2.**    subsequent flight(s).

**2.2.11** Handle

    **(a)**    Denied Boarding process

    **(b)**    Denied Boarding Compensation

**2.2.12** Direct passengers through controls to departure gate

**2.2.13** At the gate perform

    **(a)**    check-in in accordance with item 2.2.3

    **(b)**    check baggage

    **(c)**    verification of travel documents

    **(d)**    upgrades and downgrades

    **(e)**    handling of stand-by list

    **(f)**    verification of cabin baggage

    **(g)**    manage the boarding process

    **(h)**    reconciliation of passenger numbers with aircraft documents prior to departure

    **(i)**    other gate functions as specified in Annex B

**2.2.14**

    **(a)**    collect

    **(b)**    reconcile

    **(c)**    handle and forward to Carrier transportation documents (flight coupons, or other flight related documents) uplifted from departing passengers

## 2.3 Arrival

**2.3.1**

    **(a)**    perform opening/closing aircraft passenger doors

**2.3.2** Direct passengers from aircraft through controls.

## SECTION 3.      RAMP SERVICES

**3.1**      **Baggage Handling**

**3.1.1**      Handle baggage in the baggage sorting area.

**3.1.2**      Prepare for delivery onto flights
           (a) bulk baggage

**3.1.3**      Establish the number and/or weight of
           (a) bulk baggage

**3.1.4**      Offload
           (a) bulk baggage

**3.1.5**      Priorities baggage delivery to claim area.

4

| | |
|---|---|
| 3.1.6 | Deliver to claim area |
| | (a) baggage |
| | (b) oversize baggage |
| 3.1.7 | Transfer baggage |
| | (a) Provide or |
| | 1. Sortation of transfer baggage. |
| | 2. Storage of transfer baggage prior to dispatch (storage time limits to be specified in Annex B). |
| | 3. transport of transfer baggage to the sorting area of the receiving carrier. |
| 3.1.8 | Handle crew baggage. |
| | |
| **3.2** | **Marshalling** |
| **3.2.1** | (a) Provide marshalling at arrival and/or departure. |
| | |
| **3.3** | **Parking** |
| **3.3.1** | (a) Provide |
| | (b) Position and/or remove wheelchocks. |
| **3.3.2** | Position and/or remove |
| | (f) other items as specified in Annex B (e.g. safety cones) |
| **3.3.3** | |
| | (c) Operate ground power unit |
| | |
| **3.4** | **Cooling and Heating** |
| **3.4.1** | |
| | (c) Operate cooling unit. |
| **3.4.2** | |
| | (c) Operate heating unit |
| | |
| **3.5** | **Ramp to Flight Deck Communication** |
| **3.5.1** | Provide headsets. |
| **3.5.2** | Perform ramp to flight deck communication |
| | (a) during tow-in and/or push-back. |
| | (b) during engine starting. |
| | (c) for other purposes. |
| | |
| **3.6** | **Loading and Unloading** |
| **3.6.4** | (a) Provide delivery and pick-up of |
| | 1. Baggage |
| | 2. Mobility devices at aircraft doors or other agreed points to be specified in Annex B |
| **3.6.5** | (a) Provide assembly and transport of |
| | 1. baggage |
| | 2. cargo |
| | 4. documents |
| | 5. company mail between agreed points on the airport |
| **3.6.6** | (a) Unload aircraft, returning lashing materials to the Carrier. |
| | (b) Load and secure Loads in the aircraft |
| | (c) Operate in-plane loading system. |
| **3.6.7** | Redistribute Loads in aircraft. |
| **3.6.8** | Open, close and secure aircraft hold doors. |
| | (a) aircraft lower deck |
| **3.6.9** | (b) arrange for ballast (To be provided by Carrier) |
| **3.6.10** | (a) Provide or |
| | (b) arrange for safeguarding of all Loads requiring special handling ( e.g. valuables ) during |
| | 1. loading/unloading |

2. transport between aircraft and designated point on the airport

| | |
|---|---|
| **3.7** | **Starting** |
| **3.7.1** | |
| | (c) Operate air start unit |

| | |
|---|---|
| **3.8** | **Safety Measures** |
| **3.8.2** | Perform safety/ground damage inspection |

(a) immediately upon arrival
(b) immediately prior departure
1. doors and panels
2. Other inspection items as specified in Annex B and communicate the results to flight crew or Carrier's representative

| | |
|---|---|
| **3.9** | **Moving of Aircraft** |
| **3.9.2** | (a) Towbar to be provided by the Carrier |
| **3.9.3** | (a) Tow in and/or push back aircraft. |

(b) Tow aircraft between other agreed points. (Additional rates apply)
(d) Provide wing-walker(s)

| | |
|---|---|
| **3.11** | **Interior Cleaning** |
| **3.11.2** | Clean passenger and crew compartments (other than flight deck) |

(b) dispose of litter

| | |
|---|---|
| **3.11.8** | Collect and/or distribute in |

(b)toilets items provided by the Carrier.

| | |
|---|---|
| **3.11.9** | Disinfect and/or deodorize aircraft with |

(b)materials provided by Handling Company

| | |
|---|---|
| **3.12** | **Toilet Service** |
| **3.12.1** | (a)Provide |

1. Servicing (empty, clean, flush toilets and replenish fluids).
2. trituator/disposal service

| | |
|---|---|
| **3.13** | **Water Service** |
| **3.13.1** | (a) Provide |

1. Draining water tanks.
2. Replenish of water tanks with drinking water.
3. Water quality tests

| | |
|---|---|
| **3.15** | **Storage of Cabin Material** |
| **3.15.1** | (b) Arrange for suitable storage space for the Carrier's cabin material. |
| **3.15.2** | Take inventory. |
| **3.15.3** | (b) Arrange for replenishment of stocks. |

## SECTION 4. LOAD CONTROL, COMMUNICATIONS AND FLIGHT OPERATIONS

**4.1 Load Control**

**4.1.1** Convey and deliver flight documents between the aircraft and appropriate airport buildings.

**4.1.2**
  (a)  Prepare
  (b)  Sign

    **(c)**    Distribute

    **(d)**    Clear/process

    **(e)**    File documents, including but not limited to, loading instructions, loadsheets, weight and balance charts, Captain's load information and manifests where:

    **2.**    Load Control is performed by the Carrier

## 4.2 Communications

**4.2.1**

    **(a)**    Compile

    **(b)**    Receive, process and send all messages in connection with the services performed by the Handling Company, using the Carrier's originator code or double signature procedure

    **(c)**    perform EDI (electronic data interchange) transactions

    **(d)**    Inform the Carrier's representative of the contents of such messages.

**4.2.2**

    **(b)**    Operate means of communication between the ground station and the Carrier's aircraft.

## 4.3 FLIGHT OPERATIONS — General

**4.3.1** Inform the Carrier of any known project affecting the operational services and facilities made available to its aircraft in the areas of responsibility as specified in Annex B.

**4.3.2** After consideration of the Carrier's instructions, suggest the appropriate action to pilot-in-command in case of operational irregularities, taking into account the meteorological conditions, the ground services and facilities available, aircraft servicing, possibilities and the overall operational requirements.

## 4.4 FLIGHT OPERATIONS — Flight Preparation at the Airport of Departure

**4.4.1**

    **(b)**    Arrange for meteorological documentation and aeronautical information for each flight.

**4.4.2** Deliver documentation to the aircraft

**4.4.3** Analyze the operational conditions and

    **(d)**    make available the operational flight plan according to the instructions and data provided by the Carrier.

**4.4.6**

    **(c)**    Deliver

    **1.**    the fuel order

    **2.**    the fuel distribution form.

**4.4.7** Hand out flight operation forms and obtain signature of the pilot-in-command, where applicable.

**4.4.8** Provide ground handling party(ies) with the required weight and fuel data

## 4.6 FLIGHT OPERATIONS — En-route Flight Assistance

**4.6.1** Monitor movement of the flight

    **(a)**    within VHF range and provide all possible assistance as necessary. Inform the Carrier of flight progress, any irregularities and actions taken. .

## SECTION 6. SUPPORT SERVICES

### 6.2 Automation/Computer Systems

**6.2.1**

    (c)    Operate equipment to enable access to

    1. Carrier's system

**6.2.2** Access the following functions in

    (a)    Carrier's system

    1.    Training programmes.
    2.    Passenger reservations and sales
    3.    Passenger service
    4.    Baggage reconciliation.
    5.    Baggage tracing.
    6.    Operation, weight and balance and load control.

**6.2.3** Manage Automated Check-in device(s) and

    (a)    Provide or

    1.    Stock control

## SECTION 7. SECURITY

### 7.1 Passenger and Baggage Screening and Reconciliation

**7.1.1**

    (a)    Provide or

    1.    matching of passengers against established profiles
    2.    security questioning

**7.1.4**

    (a)    Provide or
    2.    reconciliation of boarded passengers with their baggage.
    3.    positive baggage identification by passengers
    4.    offloading of baggage for passengers who fail to board the aircraft.

### 7.4 Aircraft

**7.4.1**

    (a)    Provide or
    (b)    Arrange for control of access to

    1.    aircraft.

**7.4.2**

    (a)    Provide or

    1.    Search aircraft.

    2.    Sealing of aircraft (Seals to be provided by Carrier)

1.1.    The above services shall be provided at the rate set forth in Appendix A attached hereto. All rates in Appendix A will be in U.S. dollars.

Rates are based on the following monthly average flight volume:.
DCA     182

Variances in volume causing a material impact in the productivity and return on this agreement may require an adjustment to the rate. In this circumstance, the Handling Company will negotiate with Carrier in good faith to establish a mutually agreeable rate.

1.2    Handling in case of technical landing for other than commercial purposes will be charged at the off-schedule hourly rate provided in Appendix A, Section 02, provided that a physical change of load is not involved.

1.3    Handling in case of return to ramp will not be charged extra, provided that a physical change of load is not involved.  In the event the aircraft's return to the gate exceeds sixty (60) minutes beyond the scheduled departure time, the off-schedule hourly rate provided in Appendix A, Section 02 shall apply.

1.4    Handling in case of return to ramp involving a physical change of load will be charged at the off-schedule hourly rate provided in Appendix A, Section 02 .

1.5    Flight cancellations will be charged at the off-schedule operations hourly rate provided in Appendix A, Section 02  when services are required to accommodate passengers on the cancelled flight regardless of when notice is provided regarding cancellation. .

1.6    No extra charge will be made for providing the services at night or on legal holidays.

1.7.1    Carrier shall furnish all necessary GSE to provide the agreed upon services in this Annex B. Carrier-provided GSE is listed in Appendix B of this Agreement.

1.7.2    The Parties agree to together conduct an inventory and general inspection of Carrier-owned GSE on day one. If the Parties agree that the current inventory listed in Appendix B is in good operating condition and repair, the Parties will provide such written affirmation in Appendix B.  If a piece of Carrier-owned GSE equipment is determined not to be in good operating condition, Carrier will be responsible for the first time repair to bring such GSE into reasonably acceptable operating condition.

1.7.3    Handling Company will provide all Carrier-owned GSE fuel and maintenance in accordance with Handling Company's PMI program. If the Parties' reasonably establish that it is no longer practical to continue to repair a piece of Carrier-owned GSE equipment and replacement is appropriate, the Parties agree to negotiate in good faith any rate adjustment for such replacement.  Further, if the scope of work changes resulting in an increase or decrease in Carrier-owned GSE, the Parties agree to negotiate a mutually satisfactory adjustment to the applicable rate.

1.7.4    Carrier shall be responsible for the cost of all GSE single component repairs (such as an entire engine or transmission) in excess of one thousand dollars ($1,000) made in connection with the services provided for herein. For GSE repairs in excess of one thousand dollars ($1,000), Carrier may source to a third party and pay the third party repair agency directly

**PARAGRAPH 2.          ADDITIONAL CHARGES**

2.1    All services not included in Paragraph 1 of this Annex, unless noted below, will be charged at the prevailing rental rates in addition to an administrative fee of ten percent (10%).

2.2    Additional labour hours will be charged by Handling Company for services outside the work scope of this

agreement or to accommodate flights off schedule, or when an employee actually works additional hours and the hours are authorized by the Carrier's representative on duty. The additional hours will be charged at the rates provided in Appendix A Section 02.

**PARAGRAPH 3.        DISBURSEMENTS**

3.1     Any disbursements made by the Handling Company on behalf of the Carrier will be reimbursed by the Carrier at cost price plus an accounting surcharge of ten percent (10%).

**PARAGRAPH 4      LIMIT OF LIABLITY**

4.1     The limit of liability referred to in Sub-Article 8.5 of the Main Agreement shall be as follows:

| Aircraft Type | Limit (per incident) |
|---|---|
| A320/A319/A318 | $750,000 USD |
| E135/E145/E170/E190, Q400 | $500,000 USD |

**4.2**    Notwithstanding anything in this Agreement to the contrary, neither Party shall be liable to the other for loss of use, diminution of value, consequential, special, indirect or incidental or exemplary damages, including loss of profits or costs arising out of the Services performed hereunder.

**PARAGARPH 5.        SETTLEMENT**

5.1     Notwithstanding Sub-Article 7.1 of the Main Agreement, the Handling Company shall invoice the Carrier twice monthly on the 15th and the end of the month. The Handling Company shall submit the invoice to the Carrier via electronic mail to the attention of Accounts Payable at AP@rjet.com .

5.2     Notwithstanding Sub-Article 7.2 of the Main Agreement settlement shall be effected by check or wire transfer to the Handling Company within thirty (30) days from receipt of invoice.

5.3     If the Carrier disagrees with any item(s) in the invoice submitted by the Handling Company, it may withhold payment, only on the disputed item(s) until a resolution is reached with the remainder of the invoice due and payable per this Paragraph. The Carrier must promptly communicate within fifteen (15) days of date of invoice.to the Handling Company its reason(s) for withholding payment on an invoice item(s).  Both Parties shall make good faith efforts to agree on a settlement to the disputed item(s) within sixty (60) days after the date of such invoice. All undisputed charges not paid when due shall be subject to interest at the rate of one and one-half percent (1.5%) per month.

5.5     If the Carrier does not pay invoices in accordance with this Paragraph, the Handling Company may, at its discretion, place the Carrier on a prepay basis and/or discontinue services until the account is brought current and/or prepayment is made.  Such actions shall not constitute a breach or termination of this Annex B and all other terms and conditions set forth herein shall remain in effect.

5.6     The Carrier shall remit the total of invoice in US funds to, Airport Terminal Services, Inc. using the following address:

| Mailing Address | Electronic Address |
|---|---|
| Airport Terminal Services, Inc.<br>P.O. Box 430100<br>St. Louis, MO 63143-0200 | Bank Name: Citizens National Bank of Greater St. Louis<br>Address: 7305 Manchester Road, Maplewood, MO 63143<br>Telephone: 314-645-0666<br>Fax: 314-645-8960 |

| | Account Name: Airport Terminal Services, Inc.<br>Bank Account #: 0932085901<br>Bank Routing #: 081015218 |
|---|---|

**PARGARPH 6.        DURATION, MODIFICATION, REMUNERATION AND TERMINATION**

6.1     Notwithstanding Sub-Article 11.4 and 11.5 of the Main Agreement, this Agreement is valid for three (3) years from the effective date.

6.2     This Agreement shall continue in full force until terminated by either Party giving sixty days prior written notice to the other Party.

Termination by either Party of all or any part of the services to be furnished at a specific location requires sixty days prior notice to the other Party. In the event of part termination of services, consideration shall be given to an adjustment of charges.

6.3     Notwithstanding Sub-Article 11.11 of the Main Agreement, quoted rates will be held for the first two years of the Term and will be subject to a CPI upward adjustment in Year 3.

6.4     The rates depicted in this Annex B are exclusive of airport/terminal fees, charges and/or taxes, including, but not limited to concession and tricherator fees that may be assessed and such fees, charges and/or taxes will be billed separately should they apply.

6.5     The rates depicted in this Annex B do not provide for a change in law, regulation or ruling by any governmental authority materially altering the hours of service, rates of pay or working conditions; or the Carrier changing the service specifications, in which case the Parties will make good faith efforts to agree on revised rates. Any and all regulatory minimum wage adjustments will be passed through in a rate adjustment.

6.6     Notwithstanding Sub-Paragraph 6.1 of this Annex B, this Annex B may be terminated on the following terms.

6.7     Should the Agreement be terminated by Carrier prior to the third year anniversary from the Effective Date for any reason other than performance, Carrier will reimburse Handling Company the unamortized amount of start up and depreciation associated with this contract.

**PARAGRAPH 7.        CONTRACT NOTIFICATION**

7.1   Notwithstanding Sub-Article 11.3 of the Main Agreement, any notice given by one party under this Annex shall be deemed properly given if sent by registered letter, or fax followed by a registered letter to:

<table>
<tr><td align="center"><b><u>HANDLING COMPANY</u></b></td><td align="center"><b><u>CARRIER</u></b></td></tr>
<tr><td>Airport Terminal Services, Inc.<br>111 Westport Plaza Drive<br>Suite 400<br>St. Louis, MO 63146<br>Attn: Contracts Administration<br>Fax: 314-739-7280</td><td>Frontier Airlines, Inc.<br>7001 Tower Rd.<br>Denver, CO. 80249<br>Director- Airport Planning<br>Fax: 720-374-4388<br><br><b>jeffrey.campbell@flyfrontier.com</b></td></tr>
</table>

**PARAGRAPH 8 GOVERNING LAW**

8.1     In accordance with Article 9 of the Main Agreement, this Annex B shall be governed by and interpreted in

accordance with the laws of the state of Missouri in the United States of America.

8.2     In accordance with Article 9 of the Main Agreement, courts for the resolution of disputes shall be the Courts of the state of Missouri in the United States of America.

**PARAGRAPH 9          TRAINING**

9.1     The Carrier shall bear the expense of initial training at the start of this Annex B.

9.2     The Handling Company will bear the expense for training due to turnover of labor and annual recurrent training during the term of this Annex B.

9.3     Should the Carrier require the Handling Company's employees to attend training or meetings outside of their domicile, the Carrier will bear the cost of transportation, hotel and per diem at $25.00 per employee per day.

On behalf of:                                          On behalf of:

**FRONTIER AIRLINES, INC**                      **AIRPORT TERMINAL SERVICES, INC.**

By: _____          By: _____
Jeffrey D. Campbell                              Sally A. Leible

Title:  Director- Airport Planning             Title: President

Date: _____9.18.13_____                        Date: _____8/27/13_____

12

# APPENDIX A

Frontier Airlines - Ground Handling RFP

| | |
|---|---|
| Station | DCA |
| Vendor | Airport Terminal Svcs, Inc. |
| Date | 05/29/13 |

**Section 01**

| | Ramp Services ONLY | Pax Services ONLY | Integrated (Ramp + Pax Service) | RON / Security |
|---|---|---|---|---|
| A318 | $ - | $ - | $ 290.50 | $ 101.20 |
| A319 | $ - | $ - | $ 290.50 | $ 101.20 |
| A320 | $ - | $ - | $ 290.50 | $ 101.20 |
| E190 | $ - | $ - | $ 214.00 | $ 77.00 |

**Section 02**

Late Operations fees (only if > 60 minutes)   $ 123.20   Per hour per turn

Labor not associated with flight delays shall be billed at:   $24.64   Per Labor Hour

Startup expenses **must** be included in the turn rate; provide detail below for informational purposes only:

| | Rate | |
|---|---|---|
| GSE | $ - | Contract Term:   36 Months |
| IT | $ - | |
| Training | $ 14,304.00 | Training not included in turn rate |
| T&E | $ - | |
| Employee Costs | $ 4,716.00 | |
| Supplies | $ 250.00 | |
| Start-Up Team | $ 12,526.00 | |
| Recruiting | $ 800.00 | |
| Total | $ 32,596.00 | |

**Section 04**

Do you have airport space at this station?   Yes

Will you require Frontier space?   Yes

**Section 05**

Strong preference that fees below be included in turn rate; if they cannot, please provide ad/hoc rates below:

| | Rate | Driver |
|---|---|---|
| Airstart | $ - | per start |
| Air condition unit | $ - | per 30 minutes or portion thereof |
| GPU | | per 30 minutes or portion thereof |
| Air stairs | | per 30 minutes or portion thereof |
| Wheelchair Services | | per push |
| Total | $ - | |

## Appendix B Frontier Provided GSE

| Equip ID # | Old Equip # | Code | Station | Equip Type | Manufacturer | Model | Serial # | LICENSE # | MFR Date |
|---|---|---|---|---|---|---|---|---|---|
| 3014 | 2169 | YX | DCA | Airstart | STEWART STEVENSON | TMAC135 | A2135-100 | | 1985 |
| 6076 | | FRT | DCA | Beltloader | TUG | 660-1 | 7161 | n/a | 2003 |
| 6153 | 723 | YX | DCA | Beltloader | TUG | 660-11 | 3615 | | 1996 |
| 6154 | 731 | YX | DCA | Beltloader | TUG | 660-11 | 4110 | | 1997 |
| 6155 | 732 | YX | DCA | Beltloader | TUG | 660-11 | 4111 | | 1997 |
| 11086 | | FRT | DCA | Freight Cart | Rocky Mountain GSE | B40-1 | Unknown | n/a | 2001 |
| 11096 | | FRT | DCA | Freight Cart | Rocky Mountian GSE | B40-1 | Unknown | n/a | 2002 |
| 11379 | | FRT | DCA | Freight Cart | WASP | A024670-5274 | 174636 | n/a | 2005 |
| 11380 | | FRT | DCA | Freight Cart | WASP | A024670-5274 | 174637 | n/a | 2005 |
| 11913 | 2203 | YX | DCA | Freight Cart | Wasp | A02467D-3694 | 109830 | | 1997 |
| 11914 | 2204 | YX | DCA | Freight Cart | Wasp | A02467D-3694 | 109831 | | 1997 |
| 11915 | 2205 | YX | DCA | Freight Cart | Wasp | A02467D-3694 | 109832 | | 1997 |
| 11916 | 2206 | YX | DCA | Freight Cart | Wasp | A02467D-3694 | 109833 | | 1997 |
| 11917 | 2207 | YX | DCA | Freight Cart | Wasp | A02467D-3694 | 109834 | | 1997 |
| 11918 | 2208 | YX | DCA | Freight Cart | Wasp | A02467D-3694 | 109835 | | 1997 |
| 11919 | 2209 | YX | DCA | Freight Cart | Wasp | A02467D-3694 | 109836 | | 1997 |
| 11920 | 2210 | YX | DCA | Freight Cart | Wasp | A02467D-3694 | 109837 | | 1997 |
| 11921 | 2211 | YX | DCA | Freight Cart | Wasp | A02467D-3694 | 109838 | | 1997 |
| 11922 | 2212 | YX | DCA | Freight Cart | Wasp | A02467D-3694 | 109879 | | 1997 |
| 11923 | 2213 | YX | DCA | Freight Cart | Wasp | A02467D-3694 | 109828 | | 1997 |
| 111022 | 2320 | YX | DCA | Freight Cart | Wasp | A02467-D3694 | 139411 | | 2000 |
| 111023 | 2321 | YX | DCA | Freight Cart | Wasp | A02467-D3694 | 139412 | | 2000 |
| 111024 | 2322 | YX | DCA | Freight Cart | Wasp | A01054D-3323 | 139413 | | 2000 |
| 111025 | 2323 | YX | DCA | Freight Cart | Wasp | A01054D-3323 | 139414 | | 2000 |
| 111026 | 2324 | YX | DCA | Freight Cart | Wasp | A02467-D3694 | 139415 | | 2000 |
| 13004 | | FRT | DCA | Lav Truck | TLD | 1410td | 490049 | n/a | 2001 |
| 13038 | 2217 | YX | DCA | Lav Cart | Par-Kan | LVC-250 | PK 096881 | | 1997 |
| 14075 | 806 | YX | DCA | Push Back | FMC | B-360 | B350PK98009 | | 1998 |
| 14076 | 813 | YX | DCA | Push Back | FMC | B-360 | 96891 | | 1997 |
| 16234 | 115 | YX | DCA | Baggage Tractor | TUG | MA 30.1 | 13248 | | 1989 |
| 16241 | 122 | YX | DCA | Baggage Tractor | TUG | MA 30.1 | 11124 | | 1997 |
| 16256 | 149 | YX | DCA | Baggage Tractor | TUG | MA-30-1 | 10897 | | 1997 |
| 16289 | 1101 | YX | DCA | Baggage Tractor | TUG | MA-30 | 118828 | | 1997 |
| 17135 | | FRT | DCA | Tow Bar | WASP. INC. | Airbus | 176467 | n/a | 2005 |
| 17142 | | FRT | DCA | Tow Bar | WASP. INC. | Airbus | 179606 | n/a | 2006 |
| 17349 | TB02 | YX | DCA | Tow Bar | | E-170/190 | | N/A | 2008 |
| 17359 | TB11 | YX | DCA | Tow Bar | | E-170/190 | | N/A | 2008 |
| 17401 | TB152 | YX | DCA | Tow Bar | | E-170/180 | 13470-1 | N/A | 2008 |
| 17402 | TB153 | YX | DCA | Tow Bar | | E-170/190 | 13559-6 | N/A | 2008 |
| 17423 | 009 | YX | DCA | Tow Bar | PARTS MFG | MD-80 / 717 | | N/A | |
| 18019 | 187 | YX | DCA | Baggage Tractor/hi speed | TUG | MH50-4.2 | 4501207 | | 1997 |
| 19104 | | FRT | DCA | Wheelchair | guardian | wide body | A21030189 | n/a | 2004 |
| 19105 | | FRT | DCA | Wheelchair | THERADYNE | AISLE CHAIR | E41628 | n/a | 2004 |
| 21011 | | FRT | DCA | GPU | Davco | 100kva | | n/a | 2003 |
| 23026 | | FRT | DCA | Drain Cart | Aero Specialties | 100AS WWT-100 | | n/a | 2011 |
| 28009 | | FRT | DCA | Heat Cart | S&S TUG/DAVCO | DH-30 | | n/a | 2005 |
| 28025 | 914 | YX | DCA | Heat Cart | SPENCER | MK-1 COLDBUSTER | 405 | | 1996 |

All above list GSE has been inspected and accepted in general good operating condition with the noted exceptions: (indicate if none)

Accepted on Aug 22, 2013 on behalf of Frontier Airlines: _[signature]_

Accepted on Aug 22, 2013 on behalf of Frontier Airlines: _[signature: Susan Brown]_

*Handwritten notes (left margin):*

Tow Bar 17359 Not in station
Tow Bar 17349 Not in station
LC13038 Lav Cart Out of Service, Allied Aviation
Tow Bar 17401 Not in station
Tow Bar 17402 Not in station
Tow Bar 17423 Not in station

*Handwritten notes (bottom margin):*

Tow Bar 17168 not on inventory/in station
Tow Bar 17425 not on inventory/in station
wheel chair 19104 in station
wheel chair 19105 in station